# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **RESPONSIVE INNOVATIONS, LLC.** | ) | **CASE NO.4:08CV1184** |
| **ET AL.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **HOTLZBRINCK PUBLISHERS, LLC** | ) | **ORDER** |
| **ET AL.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CHRISTOPHER A. BOYKO, J:

This matter is before the Court on Defendants' Motion to Exclude Testimony of Plaintiffs' Expert Chris Bartone (ECF # 167).  For the following reasons, the Court denies Defendants' Motion.

This is a patent infringement case brought by Responsive Innovations, LLC ("Responsive") and Turning Technologies, LLC ("Turning") (collectively, "Plaintiffs") against Holtzbrinck Publishers, LLC ("Holtzbrinck") and MacMillan Publishers, Inc. ("MacMillan") (collectively, "Defendants").  Both Plaintiffs and Defendants market and sell radio frequency based audience response systems that employ handheld-initiated

communications.  Plaintiffs brought suit on May 13, 2008, alleging infringement of U.S.

Patent No. 7,330,716 ("the '716 Patent"), entitled "Wireless Communication System."  (Doc.

No. 1; Doc. No. 23.)  Plaintiffs' specifically allege that Defendants, through Defendants'

i>Clicker wireless audience response system, infringe claims 1-5, and 8-9 ("the asserted

claims") of the '716 Patent.  (Doc. No. 23.)

     Defendants deny infringement and further assert that the patent is invalid.  (Doc. No.

15; Doc. No. 25.)  Defendants brought declaratory judgment counterclaims of Non-

Infringement and Invalidity under 35 U.S.C. §§ 102, 103, and 112 and counterclaims of

Unfair Competition under the Lanham Act § 43(a), Common Law Unfair Competition,

Deceptive Trade Practice under Ohio Rev. Code § 4165.02, Defamation, and Tortious

Interference.  (Doc. No. 25.)

### The '716 Patent's History

     The '716 Patent issued on February 12, 2008, from U.S. Patent Application No.

11/336,361 ("the '361 Application"), filed on January 20, 2006.  The patent claims priority to

a provisional application, filed on January 21, 2005.  Kevin Adkins, Responsive's President,

is the sole inventor of the '716 Patent.  Adkins assigned his rights in the '716 Patent to

Responsive, the current owner of the '716 Patent.  Responsive granted an exclusive license to

Turning, the exclusive licensee of the '716 Patent.

### Overview

     The '716 Patent is generally directed to audience response systems, i.e., systems

"employed to retrieve (or receive) responses from a group of individuals at a central

location."  U.S. Patent No. 7,330,716, Col. 1, Lines 18-20.  The audio response system of the

'716 Patent has a plurality of transmitters (handheld devices) and at least one receiver (base unit).  U.S. Patent No. 7,330,716, Col. 1, Lines 11-13.  Each handheld device includes a wireless data transmitter illustrated as a radio frequency ("RF") transceiver configured to transmit and receive RF signals.  U.S. Patent No. 7,330,716, Col. 4, Lines 4-7.

The '716 Patent contains 13 claims, including 1 independent claim (claim 1) and 12 dependant claims (claims 2-13).  Independent Claim 1 is representative of the claimed invention and reads as follows:

> 1.  A wireless communication system comprising:
> a plurality of handheld devices, each handheld device including:
> a transmitter, an input selection control, and a processor configured
>  to receive a user selection from the input selection control; and upon
>  receipt of the user selection, communicate instructions to the
> transmitter to transmit an RF signal encoding an address and the user
> selection according to a defined RF profile, wherein the defined RF
> profile comprises a distinct period of no RF transmission, and
> a first period of RF transmission corresponding to transmission of
> the RF signal, where the first period of RF transmission occurs
> after the distinct period of no RF transmission and is responsive
> to receipt of the user selection from the input selection control;
> and a receiver including a transceiver configured for data
> communication with a processor.

Dependant claims 2-5 and 8-9, when simplified, add additional limitations to claim 1:

Dependent claim 2 adds a computer readable medium that stores an address.

Dependent claim 3 adds that the base unit receiver decodes the RF signal into the address and the user selection following receipt by the transceiver.

Dependent claim 4 adds that the base unit receiver stores the user selection in the computer readable medium.

Dependent claim 5 adds that there is a second period of RF transmission including an acknowledgment after receipt by the base unit receiver.

Dependent claim 8 adds that there is a distinct period of no RF transmission after the

second period of RF transmission.

Dependent claim 9 adds that the defined RF profile includes a transmission interval separating periodic retransmissions of the RF signal.

Before the Court is Defendants' Motion in Limine to Exclude Testimony of Plaintiffs' Expert Chris Bartone.  According to Defendants, Dr. Bartone failed to test the i>Clicker in a manner that would determine whether the asserted claims are infringed.  Furthermore, Defendants contend Dr. Bartone is not an expert in audience response systems and cannot opine on how a person of ordinary skill in the art would interpret the terminology specific to audience response systems.

## LAW AND ANALYSIS

Rule 702 of the Federal Rules of Evidence states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The United States Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, (1999), determined that Courts act as "gatekeepers" ensuring expert testimony "is not only relevant, but reliable." *Daubert,* 509 U.S. at 589.  *Kumho Tire* applied the same gatekeeping requirement to non-scientific expert testimony.   The *Daubert* Court set forth the following requirements for expert testimony:  (1) the proffered witness must be qualified as an expert; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the expert's

4

testimony will assist the trier of fact to understand the evidence or determine a fact in issue."
*Id.; Daubert,* 509 U.S. at 589-91.

*Daubert* suggested the following inquiries to aid the Court in determining the
relevance and reliability of the proffered expert testimony: "(1) whether the theory or
technique has been tested--that is, whether the expert's theory can be challenged in some
objective sense; (2) whether the technique or theory has been subjected to prior review and
publication; (3) the known or potential rate of error of the technique or theory when applied;
(4) the existence and maintenance of standards and controls; and (5) whether the theory has
gained general acceptance within the scientific community." *In re: Meridia Products Liability
Litigation,* 328 F. Supp.2d 791, 804 (N.D. Ohio 2004) citing  *Daubert,* 509 U.S. at 593-94.
The Supreme Court went on to say this list was non-exclusive and courts may, at their
discretion, consider other factors. *See Kumho Tire,* 526 U.S. at 145.

Courts are not required to hold a formal hearing on *Daubert* challenges. *See
Greenwell v. Boatwright,* 184 F.3d 492, 498 (6th Cir.1999).

**Qualifying Expertise of Dr. Bartone**

Defendants challenge Bartone's expertise in the relevant field.  According to
Defendants, Dr. Bartone lacks experience in the audience response systems field and "simply
does not speak the language of one in the art." (ECF # 167-2 pg 12).   Defendants contend the
bulk of Bartone's experience is in GPS tracking and navigation systems, particularly in
aircraft.  Bartone admits he has not done any work with the chips used in Plaintiffs' device
and his only experience using audience response systems like Plaintiffs was as an audience
member using a similar device in a seminar taught by someone else.  Accordingly,

Defendants contend Bartone cannot opine on how a person of ordinary skill in the art would understand highly specialized terms unique to the audience response field given his lack of relevant experience.

Plaintiffs' argue that Defendants concede Bartone is an expert in wireless communications and that the parties agree a person of ordinary skill in the art " has a Bachelors degree and several years of experience in wireless communications." (ECF # 72-1 pg.18-19).  Based on this agreement, Plaintiffs contend Bartone is an agreed upon skilled artisan.  Furthermore, his qualifications include a Ph.D. in electrical engineering and extensive experience with RF technologies.  In addition, the '716 patent's title is "Wireless Communication System" and the preamble to the claims recite "a wireless communication system."  Bartone's qualifications and experience are largely involved in wireless communications systems, albeit not audience responses systems.  In addition, the prior art references before the Court, with the exception of the Beamish reference, do not involve audience response systems.[1]  This fact alone warrants denial of Defendants' Motion according to Plaintiffs.

The Court first notes that the briefs and supporting materials present sufficient basis for the Court to rule without holding a hearing.  The Court holds that Bartone is qualified as an expert to testify on wireless communications systems based on his " knowledge, skill, experience, training, or education."  First, a review of Bartone's CV shows he is a professor of electrical engineering at Ohio University and has a Masters of Science with specialization

---

[1]    Beamish is an audience response system Defendants allege is prior art that anticipates the '716 patent rendering it invalid.

in communications engineering.  It is undisputed Bartone  has extensive experience in RF communications.   Because he has little or no experience in a subset of wireless communications - i.e.- audience response systems - does not require his exclusion from testifying.  "It is of little consequence to questions of admissibility" that an expert "lacks expertise in the very specialized area."  *Surles ex rel. Johnson v. Greyhound Lines, Inc.* 474 F.3d 288, 294 (6th Cir. 2007).  See also *Smith v. BMW N. Am., Inc.,* 308 F.3d 913, 919 (8th Cir.2002) ("finding abuse of discretion where the district court *excluded* testimony of an expert witness qualified in a general field merely because that witness lacked expertise more specialized and more directly related to the issue at hand"). *Surles* at 294.

Here, Defendants do not distinguish why Bartone's undisputed expertise in wireless communications would not be applicable to an audience response system, especially since the prior art references are all non-audience response systems, with the exception of Beamish.

In light of the above factors, the Court finds Bartone qualifies as an expert based on his education and experience.

Defendants challenge Bartone's opinion that prior art does not meet the claim limitation of  "a first period of RF transmission that corresponds to transmission of an RF signal by the handheld device that:  (1) occurs after a separate or non-overlapping period of time during which there is no transmission of an RF signal between the handheld device and the receiver and (2) is initiated by the user selection from the input selection control" for two reasons.   Bartone opines that:  (1) the first period of RF transmission in the Beamish, ALOHA and I-Vote prior art is not from the handheld device because the base unit sends an initial transmission; (2) the transmission from the audience response unit in Beamish is not

"responsive to receipt of the user selection" because of a "clear to transmit" feature. Defendants contend Bartone failed to test for these features in the i>Clicker and such failure is fatal to his infringement opinion.

**"Receiver-First" Transmission**

According to Defendants, Bartone's review of the above prior art led him to conclude each of the above references incorporate an initial signal from a receiver to the remote units that distinguishes them from the '716 patent which claims an initial signal from the handheld unit to the receiver.  Yet, Bartone failed to test whether a receiver-first signal exists in the i>Clicker.

According to Defendants, Bartone used an oscilloscope and a spectrum analyzer to observe the radio frequency signals generated by the i>Clicker.  In looking at the oscilloscope display incorporated into Bartone's expert report, Defendants' contend Bartone only considered a 2 millisecond time period when he determined there was a period of no distinct RF transmission.   Bartone also attempted to determine whether there was any RF transmission occurring prior to a button being depressed on the handheld device.  Bartone concluded that no RF transmission occurred however, this time period only encompassed a 2 millisecond time period.  Such a small time frame is insufficient to support Bartone's conclusion that no initial RF transmission occurred.  Defendants liken Bartone's experiment and conclusion to an expert observing Old Faithful for five minutes and concluding that no eruption will occur when, in fact, Old Faithful erupts every hour.  Instead, Bartone did not test for initial signals similar to those allegedly found in the prior art.  Without such tests, Bartone's opinions have no legitimate basis to support his conclusion that the i>Clicker

receiver does not send an initial signal to the hand held units and therefore, infringes on the claims of the '716 patent.

Plaintiffs respond that Defendants do not challenge Bartone's methodology nor do they challenge the applicability of Bartone's tests on the i>Clicker.  Instead, Defendants challenge the comprehensiveness of Bartone's testing by alleging he did not test for a sufficient period of time.  However, according to Plaintiffs, Defendants ignore Bartone's analysis that he observed the i>Clicker in a number of scenarios, including: when the receiver was turned on, when the receiver and handheld device were turned on, when the receiver was turned on with the software running and when the receiver and handhelds were turned on and the software was running.  Only after making these observations did Bartone then observe the first period of RF transmission was sent by the handheld.  Therefore, Plaintiffs contend Defendants misrepresent the extent of Bartone's observation, experimentation and analysis.

The Court holds that Defendants' challenge to the efficacy of Bartone's testing concerns the weight,  not the admissibility of Bartone's testimony.   Defendants do not challenge the use of an oscilloscope to determine RF signals, only that Bartone did not test for a sufficient period of time.  However, as Plaintiffs point out, Bartone observed no RF signals under a number of scenarios.  Thus, the trier of fact may consider Bartone's testimony, subject to cross examination by Defendants counsel.

**Clear to transmit**

Defendants further argue Bartone opines that a clear to transmit feature found in Beamish distinguishes it from the '716 patent which does not incorporate such a feature.  A clear to transmit feature prevents multiple RF signals sent from a number of handheld devices

9

from colliding with each other. The clear to transmit feature checks to see if a channel is clear before transmitting data to the receiver. This clear to transmit feature is found in the Beamish prior art. According to Defendants, Bartone failed to test for a clear to transmit signal in the i>Clicker and cannot rule out such a feature. Therefore, his opinion that the i>Clicker infringes because it does not incorporate a clear to transmit signal should not be considered by the Court.

Plaintiffs contend this argument is invalid because Defendants never asserted that the i>Clicker employs a clear to transmit feature. Furthermore, Plaintiffs contend there was no need to test for such a feature because there is no basis to believe such a feature is incorporated in the i>Clicker. The i>Clicker creator testified that collisions occur but are infrequent. Also, Defendants own expert, Dr. McIntyre, testified he did not measure for carrier sensing (a clear to transmit signal) on the i>Clicker but he was "pretty sure there is no carrier sensing going on." (ECF # 179-4). Thus, there was no reason to suspect or test for a feature that was not claimed and no evidence to support.

The Court holds that Bartone may testify to the existence of a clear to transmit signal in Beamish as a distinguishing feature to challenge Beamish as anticipatory art. His failure to test for such a feature in the i>Clicker does not render his opinion that Beamish does not anticipate flawed or invalid when no one claimed a clear to transmit signal in the i>Clicker.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
Dated: March 25, 2014                    United States District Judge