# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| RESPONSIVE INNOVATIONS, LLC., ET AL., | ) ) ) | CASE NO.4:08CV1184 |
| Plaintiffs, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| Vs. | ) ) | |
| HOLTZBRINCK PUBLISHERS, LLC., ET AL., | ) ) ) | ORDER |
| Defendants. | ) ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiffs Responsive Publishers, LLC and Turning Technologies, LLC.'s Motion to Exclude Certain McIntyre Testimony Regarding Validity of the '716 patent (ECF # 171). For the following reasons, the Court denies Plaintiffs' Motion.

Plaintiffs move to exclude certain opinions of Defendants' technical expert, James E. McIntyre, including his opinions that: combining wireless communication systems with unsynchronized communications protocols would have been obvious to a person of ordinary skill in the art; miniaturizing the system taught in Abramson would have been obvious to a person of ordinary skill in the art; claims 5, 8, and 9 of the '716 patent would have been obvious in view of the X-10 system and the teaching of the Nordic references; it would have been obvious for one

of ordinary skill in the art to substitute handheld devices into the Nordic references, individually or collectively; and, that the claims of the '716 patent would have been obvious in view of the Nordic Evaluation Kit.  According to Plaintiffs, each one of the above opinions of McIntyre were conclusory and unsupported with explanation and must be excluded under Fed. R. Civ. P. 26 because they do not provide the complete basis for his conclusions nor does he supply the underlying analysis.

Defendants oppose Plaintiffs' Motion, contending that McIntyre's opinions are properly supported.  Defendants contend Plaintiffs rely on McIntyre's conclusory paragraphs, yet ignore the pages of detailed analysis and explanation leading up to his conclusions.

## LAW AND ANALYSIS

Plaintiffs seek to exclude McIntyre's testimony for failure to comply with Fed. R. Civ. P. 26(a)(2) which reads:

> (**2**) *Disclosure of Expert Testimony*.
>
> (**A**) *In General*. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
>
> (**B**) *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
> (**i**) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (**ii**) the facts or data considered by the witness in forming them;

According to Plaintiffs, McIntyre's opinions do not provide sufficient underpinnings to

2

meaningfully examine his conclusions.  When examining an expert's testimony on obviousness, courts have held the expert's conclusions must be  sufficiently articulated and supported to allow meaningful examination.  Conclusions lacking such support may not be considered.  "[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *Innogenetics, N.V. v. Abbott Laboratories,* 512 F.3d 1363, 1373 ( Fed Cir. 2008) quoting *In re Kahn,* 441 F.3d 977, 988 (Fed.Cir.2006).

## McIntyre's Opinions on Combining Wireless Communications withUnsynchronized Communications Protocols

According to Plaintiffs, in his first expert report at pg. 31-33, McIntyre opined that the combination of wireless communications systems with unsynchronized RF (radio frequency) communication protocols, including acknowledgments and retransmissions, would render the claims at issue obvious.  However, McIntyre merely lists the prior art wireless communication devices without explaining how the combination would be made and fails to describe which unsynchronized protocol they would be combined with.  Because he fails to describe a reason to combine, fails to evidence a reasonable expectation of success and does not consider secondary considerations supporting validity, his opinion fails under *Innogenetics*.

Defendants reject Plaintiffs assertion, arguing that McIntyre provides several reasons one skilled in the art would combine the references described in his report.  According to Defendants, McIntyre provided four reasons to combine.  First, to avoid collisions. (McIntyre pg 32).  Second, to improve data transmission integrity (Id.).  Third, simplicity in design and development and battery efficiency.  (Id. at 33).  Fourth, combination was predictable and a routine modification requiring no inventive skill.  (Id.).  These reasons were all explored at

McIntyre's deposition.

The Court rejects Plaintiffs' Motion on McIntyre's testimony concerning combining wireless communication systems with unsynchronized RF communication protocols.  First, McIntyre opined that one of ordinary skill in the art would be aware of wireless communication systems, including multiple handheld devices that communicate with a receiver using RF signals. He then lists several devices he contends incorporate such features, including bar code readers, security system transmitters, satellite communications and audience response systems.  (Id. at 31).  He further opines that one of ordinary skill in the art would be aware of asynchronous RF communication protocols at the time of the '716 patent and provides examples.  McIntyre then describes why one of ordinary skill in the art would combine such features.  He opines one may seek to avoid collisions which render both signals "unintelligible" because it is well known in the art that such collisions are "undesirable."(Id.)  McIntyre further opines that data transmission is improved using asynchronous RF protocol because of the acknowledgment and retransmission feature.  McIntyre states that a person of skill in the art would understand this improvement.  He further opines that such combination is simpler to design and develop and is more efficient in battery consumption and reduces processing power.  These conclusions demonstrate a rational underpinning for his conclusions on obviousness and are admissible.

**McIntyre's Opinions on Miniaturization of the Aloha System**

Plaintiffs contend that McIntyre's conclusion that it would have been obvious to one skilled in the art to miniaturize the ALOHA system by using handheld components is inadmissible because he provides no basis for this conclusion.

Defendants point the Court to McIntyre's Report at page 31, where McIntyre identifies

4

examples in which the ALOHA protocol is used with handheld components.  McIntyre opines
that such miniaturization of a remote terminal into a handheld device requires no inventive skill
but is instead a routine modification.  When viewed against Federal Circuit precedents that
miniaturization is generally obvious to one skilled in the art, Defendants argue McIntyre's
opinion is sufficiently supported to avoid exclusion.

        The Court finds McIntyre's opinions on obviousness concerning miniaturization of the
ALOHA protocol demonstrates a rational underpinning sufficient to defeat exclusion.  On page
30 of his First Report, McIntyre opines that the ALOHA protocol includes all the limitations of
the asserted claims of the '716 patent, particularly the RF profile.  According to McIntyre, one
skilled in the art could "readily have applied the pure ALOHA protocol" to "create a wireless
communication system with handheld components."  He opines that a number of fields use and
apply just such a communication protocol with handheld units.  He describes examples, such as a
wireless terrestrial system with remote units that includes handheld computers and two way
pagers by satellite; mobile bar code readers and miniature radio frequency remote transmitters.
McIntyre opines that simply miniaturizing the handheld receiver is a routine modification.  Thus,
McIntyre's opinion on obviousness as it relates to miniaturization of handheld remotes combined
with the ALOHA protocol is not an unsupported conclusion lacking rational underpinning, but
instead, is based on articulated reasoning in light of prior art references.  Therefore, the Court
denies Plaintiffs' Motion on McIntyre's miniaturization opinions.

**McIntyre's Opinions on Combining Nordic References or the X-10 System with Known
Acknowledgment Techniques**

        According to Plaintiffs, McIntyre's Fourth Supplemental Expert Report opines that

5

certain references (Link Integrity Paper, Mouse Keyboard Note), combined with references describing acknowledgment and retransmission features in a wireless communication system, renders claims 5, 8 and 9 of the '716 patent obvious because such techniques are known techniques combined to produce a predictable result. He further opines that the X-10 system, combined with references describing acknowledgment and retransmission signals, renders these same claims obvious for the same reason. However, Plaintiffs' contend McIntyre fails to provide any explanation supporting why one skilled in the art would combine such references.

Defendants argue McIntyre's Fourth Supplemental Report describes at great length the basis for his opinions on why one skilled in the art would combine the X-10 and Nordic references with acknowledgment and retransmission signals. He describes the advantages such combination would have, including enhanced communication reliability, serving large number of users with little overhead, resolving collisions and establishing safe links. (McIntyre Fourth Report at pg. 32-35).

The Court holds McIntyre's Fourth Supplemental Report contains sufficient rational underpinnings to support his conclusion that one skilled in the art would combine the Nordic reference and the X-10 references with acknowledgment and retransmission protocols. According to McIntyre, applying an acknowledgment and retransmission protocol to the ALOHA reference enhances reliability. (Fourth Report pg. 34). McIntyre opines that the Link Integrity Paper teaches that a two way communication system, using RF transceivers, is an option in wireless systems and that two way systems have increased performance over one way systems. Based on this, McIntyre opines that one skilled in the art would read the Link Paper, conclude that a two way system is possible and recognize its benefit in an unreliable network

such as a wireless network.  It would then be simply a matter of using a known technique to yield predictable results.  McIntyre uses the same logic to conclude combining the acknowledgment and retransmission feature with the X-10 would render claims 5, 8 and 9 of the '716 patent obvious.  This demonstrates a rational underpinning for his obviousness conclusion.  McIntyre explains the benefits of two way communication in improving reliability of transmitting data.  He opines that the acknowledgment and retransmission features would be known to one skilled in the art and such knowledge would motivate one to combine this feature with a one way wireless communication device.  This is sufficient reasoning to permit his testimony.

**McIntyre's Opinion that it would be obvious to substitute handheld devices in the Nordic reference**

According to Plaintiffs, in his Fourth Supplemental Report, McIntyre opines that it would be obvious to one of ordinary skill in the art to combine handheld devices into the Nordic references.  McIntyre bases his opinion on the inventor of the 716 patent, Adkins', use of the Nordic chip in the Responsecard, which is Plaintiffs' embodiment.  Plaintiffs contend this opinion represents impermissible hindsight.

Defendants argue that Plaintiffs ignore the true rationale for McIntyre's conclusion that Plaintiffs' '716 patent was obvious in light of the Nordic references and the use of the Nordic chip in handheld devices.  According to Defendants, McIntyre based his conclusion on Nordic literature describing its use in other types of handheld devices, including joysticks, remote controls, mice and keyboards.  Therefore, McIntyre's conclusion is based, not on impermissible hindsight, but on his consideration of literature on the Nordic references expressly describing its

use in handheld devices.

The Federal Circuit has held "[t]he combination of elements from non-analogous sources, in a manner that reconstructs the applicant's invention only with the benefit of hindsight, is insufficient to present a *prima facie* case of obviousness." *In re Oetiker,* 977 F.2d 1443, 1447 (Fed.Cir.1992). The Federal Circuit in *In re Kotzab* 217 F.3d 1365, 1369 (Fed Cir. 2000), further described the rationale against using hindsight to show obviousness:

> A critical step in analyzing the patentability of claims pursuant to section 103(a) is casting the mind back to the time of invention, to consider the thinking of one of ordinary skill in the art, guided only by the prior art references and the then-accepted wisdom in the field. (Internal citation omitted). Close adherence to this methodology is especially important in cases where the very ease with which the invention can be understood may prompt one "to fall victim to the insidious effect of a hindsight syndrome wherein that which only the invention taught is used against its teacher." *Id.* (quoting *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1553 (Fed.Cir.1983)).

The Court agrees that such use of hindsight by McIntyre would be improper and would fail to support a conclusion of obviousness if that were all he relied on. However, in his Fourth Supplemental Report, McIntyre describes several sources he considered to reach his conclusion that combining the Nordic references with handheld devices was obvious. This includes his observation that a number of audience response systems prior to the '716 patent taught using wireless response systems with handheld devices; the '716 patents own Background recognized such combinations; the Nordic references own disclosures of the use of the Nordic radio chips in other handheld devices such as game controllers, joysticks, remote controls, etc... (Fourth Supplement report at pg. 23). Therefore, the Court finds McIntyre based his conclusions not on Adkins' incorporation of the Nordic radio chip into the Responsecard used in the '716 patent, but relied on several prior art references to support his conclusion on obviousness. Therefore, the

8

Court denies Plaintiffs' Motion to exclude this portion of McIntyre's testimony.

**McIntyre's Opinions Regarding the Nordic Evaluation Kit**

Plaintiffs seeks to exclude McIntyre's testimony that one skilled in the art would know that an input selection control could be used to generate a data packet to be transmitted; that configuring the processor in this manner would require no inventive skill; that the nRF24E1 (radio chip)  operates only in Shockburst mode and in this mode is capable of making asynchronous transmissions; the Nordic EV board (circuit board) could transmit an RF signal in a first period of RF transmission; and one skilled in the art would know that this period of no RF transmission would occur after a period of no RF transmission.  Based on this testimony McIntyre concludes that the Nordic Evaluation Kit alone or combined with prior art renders obvious claims 1-5, 8 and 9 of the '716 patent.  According to Plaintiffs, this portion of McIntyre's testimony contains impermissible hindsight on the teachings of the '716 patent and should be excluded.

Defendants respond that Plaintiffs are not attacking McIntyre's opinions as unsupported or conclusory.  Instead, their sole argument is his alleged improper use of hindsight.  However, Defendants argue, McIntyre relies on materials wholly apart from the '716 patent to reach his conclusions.

First, regarding his conclusion that pushing a button generates a signal, Defendants contend such a conclusion is such a basic concept any one skilled in the art using common sense would understand this.  Second, Defendants contend that configuring a processor to receive a user selection would require no inventive skill, is not based on improper hindsight but was

instead taught in the Frequency Hopping Papers and other Nordic materials not the '716 patent. Nordic itself teaches one how to configure the processor.  Third, McIntyre based his conclusion that the Nordic chip operates in Shockburst mode and can transmit asynchronously in the first period of RF transmission on his review of the Nordic Semiconductor references.  McIntyre noted that in a wireless system containing a transmitter and a receiver, Shockburst is intended to be used in both devices.  These conclusions were drawn by the Nordic Product Specifications and, according to McIntyre, teach a person of ordinary skill that Shockburst makes asynchronous transmissions and can transmit a RF signal in the first period of transmissions.  Lastly, McIntyre opines that a person of ordinary skill in the art would know that unless a device transmitted constantly, a transmission occurs only  after a period of no transmission. As McIntyre stated, "at some time every wireless system ceases to transmit."

The Court finds McIntyre's opinions are based on the Nordic literature and do not rely on improper hindsight of the '716 patent.  McIntyre's Fourth Supplemental Report and pages 2-3 and 10, describes in great detail the teachings of the Nordic device, the Shockburst technology incorporated therein and its functions.  Therefore, the Court finds McIntyre did not improperly rely on hindsight and denies Plaintiffs' Motion to exclude McIntyre's testimony.

Lastly, Plaintiffs argue McIntyre failed to consider secondary considerations in his obviousness analysis.  However, as Defendants contend, and the Court agrees, such failure does not warrant exclusion of an expert's testimony because secondary considerations are for a patentee to raise in rebutting a prima facie showing of obviousness.  In  *Inline Connection Corp. v. AOL Timer Warner,*  No. CIVA 02–272MPT, CIVA 02–477 MPT, 2007 WL 275928 * 5 (D. Del. Jan. 29, 2007, the court held:

clear Federal Circuit law stating that secondary considerations are a means for a *patentee* ( *i.e.,* Inline) to *rebut* a prima facie showing of obviousness by a defendant.  Further, the case law cited by Inline does not examine the issue of secondary considerations with regard to expert opinions on obviousness. Rather, the case law cited by Inline shows that the trial court as the *fact finder* is obligated to consider evidence of nonobviousness when reaching its conclusion on obviousness.  A defendant does not bear the burden of showing the absence of such factors. Moreover, as evidenced by the cases cited by the defendants, those factors need not be considered at all if they are not relevant.

Therefore, for the foregoing reasons, the Court denies Plaintiffs' Motion.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  March 26, 2014

11