# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| RESPONSIVE INNOVATIONS, LLC and<br>TURNING TECHNOLOGIES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>HOLTZBRINCK PUBLISHERS, LLC<br>and<br>MACMILLAN PUBLISHERS, INC.,<br><br>Defendants. | Case No. 4:08-cv-01184-CAB<br><br>Judge Christopher A. Boyko |

## OPPOSITION OF DEFENDANTS HOLTZBRINCK PUBLISHERS, LLC AND MACMILLAN PUBLISHERS, INC. TO PLAINTIFFS' MOTION FOR CLARIFICATION OF THE PROTECTIVE ORDER

Arne M. Olson (admitted *Pro Hac Vice*)
Dennis H. Ma (admitted *Pro Hac Vice*)
Matthew De Preter (admitted *Pro Hac Vice*)
**OLSON & CEPURITIS, LTD.**
20 North Wacker Drive, 36th Floor
Chicago, IL 60606-3103
Tel: (312) 580-1180
Fax: (312) 580-1189
Email: aolson@olsonip.com
dma@olsonip.com
mdepreter@olsonip.com

Gary A. Corroto (0055270)
Edmond J. Mack (0082906)
**TZANGAS PLAKAS MANNOS LTD.**
220 Market Avenue South, 8th Floor
Canton, Ohio 44702
Tel: (330) 455-6112
Fax: (330) 455-2108
Email: gcorroto@lawlion.com
emack@lawlion.com

Attorneys for Defendants Holtzbrinck Publishers, LLC
and Macmillan Publishers, Inc.

# **Contents**

I.     Introduction ..................................................................................................... 1

II.    There Is No Factual Basis for Dispensing With the Protective Order and Allowing Plaintiffs to Use Defendants' Confidential Information Outside the Litigation ................. 2

     A.    Defendants' Reexamination Is Timely and Was Spurred By Defendants' Recent Discovery of the Invalidating Roberts Reference ........................................ 2

     B.    Plaintiffs Cannot Be "Prejudiced" By Having To Train Another Set of Attorneys for Reexamination Because Plaintiffs Already Have a Prosecution Team That Is Fully Educated On All the Arguments Made In the Litigation ..................................................................................................... 3

     C.    The Protective Order Bars Trial Counsel from Participating In the Prosecution of Their Clients' Patents—That Includes Reexaminations ................ 5

     D.    Strong Policy Concerns Dictate That Plaintiffs Cannot Be Provided the Opportunity To Use Defendants' Confidential Information To Alter the Scope of Their Claims During the Prosecution Before the PTO ............................ 7

III.   The Case Law Relied Upon By Plaintiffs' Does Not Support the Broad Relief It Requests In Its Motion ........................................................................................... 9

     A.    Plaintiffs Fail To Establish On a Counsel-By-Counsel Basis that Any of Their Attorneys Should Be Exempt From the Prosecution Bar this Court Entered ......................................................................................................... 9

     B.    The Cases Plaintiffs Rely On Do Not Support Plaintiffs' Request ...................... 11

IV.   Plaintiffs Used Defendants' Confidential Information Once Before When Plaintiffs Were Prosecuting Its Related Patents and the Court Should Prevent that From Happening Again ............................................................................................... 14

V.    Conclusion ..................................................................................................... 15

i

## CASES

*Ameranth, Inc. v. Pizza Hut, Inc.,*
    2012 WL 528248, *1 (S.D.Cal. 2012) ................................................................ 13, 14

*Datatrak Int'l, Inc. v. Medidata Solutions, Inc.,*
    2011 WL 3652444, *3 (N.D. Ohio Aug. 19, 2011) ......................................... 14

*Hochstein v. Microsoft Corp.,*
    2008 WL 4387594 (E.D. Mich. Sept. 24, 2008) ............................................. 8

*In re Deutsche Bank Trust Co. Americas,*
    605 F.3d 1373 (Fed.Cir. 2010) ................................................. 9, 10, 11, 12, 14

*Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.,*
    823 F.2d 159 (6th Cir. 1987) ......................................................................... 10

*Mirror Worlds, LLC v. Apple, Inc.,*
    2009 WL 2461808 (E.D.Tex. Aug. 11, 2009) ............................................. 9, 11

*NeXedge, LLC v. Freescale Semiconductor, Inc.,*
    820 F.Supp.2d 1040, 1042 (D.Ariz. 2011) ................................................... 12

*Pall Corp. v. Enteris, Inc.,*
    655 F.Supp.2d 169, 172 (E.D.N.Y. 2008) ................................................... 13

## OTHER AUTHORITY

MPEP §2249 ............................................................................................................ 3

MPEP §2250 ............................................................................................................ 7

MPEP §2260 ............................................................................................................ 7

MPEP §2266 ............................................................................................................ 7

Plaintiffs do not seek to clarify the protective order.  They seek to change it.  The question here is can Plaintiffs' trial counsel—who have access to secret, attorneys' eyes only information about the design and operation of Defendants' products—be allowed to use that information before the Patent Office for the benefit of Plaintiffs' patent.  This is particularly inappropriate here given that Plaintiffs already have separate prosecution attorneys who have been handling Plaintiffs' prosecution for years.

## I.     Introduction

Rather than focusing on the specific facts, Plaintiffs try to analogize the positions of the parties here to other cases.  They cite a number of different decisions each for the overarching proposition that barring trial counsel from participation in reexaminations is inappropriate.  However, the case law is not so broad.  The cases show that a party seeking exemption from a bar bears the burden of showing that the exemption is warranted on a counsel-by-counsel basis.

Not only is Plaintiffs' case law inapposite, the facts here belie Plaintiffs' request.  Indeed, Plaintiffs already have a fully educated patent prosecution team dedicated to the '716 patent and other patents related to it.  Plaintiffs were responsible for drafting the prosecution bar in the first instance.  Plaintiffs' trial counsel has access to Defendants' secret, confidential information.  Plaintiffs have already failed to maintain an adequate wall between its trial and prosecution teams by using Defendants' confidential information during the prosecution of its patents.

Overall, the complaints raised by Plaintiffs do not provide sufficient basis for this Court to modify the protective order.  Defendant Holtzbrink Publishers, LLC filed the reexamination expeditiously after Plaintiffs opposed Defendants' efforts to have the Court consider the invalidating Roberts reference.  Plaintiffs have, since the beginning, had a separate prosecution

1

team that is fully aware of all Plaintiffs' and Defendants' arguments respecting validity and the

prior art.  The prosecution bar has always prohibited trial counsel from prosecuting its clients'

patents, including reexaminations.  There are also significant policy concerns for preventing

Plaintiffs from having the opportunity to use Defendants' confidential information to target

Defendants' products through amendment.

      The Court must hold Plaintiffs to their promises to keep separate their counsel and not to

use Defendants' confidential information when prosecuting patents before the Patent Office,

including prosecuting the reexamination at issue.

**II.**    **There Is No Factual Basis for Dispensing With the Protective Order and Allowing Plaintiffs to Use Defendants' Confidential Information Outside the Litigation**

    **A.**    **Defendants' Reexamination Is Timely and Was Spurred By Defendants' Recent Discovery of the Invalidating Roberts Reference**

      Defendants only recently discovered the Roberts reference.  Immediately after they found

it, Defendants contacted Plaintiffs to secure their agreement to allow this Court to consider the

reference.  Plaintiffs refused.  As a result, Defendants filed a motion for supplementation asking

this Court to consider the Roberts reference.  ECF 201.  Plaintiffs opposed that motion seeking to

avoid having Roberts considered in any validity analysis.  ECF 202.

      To ensure that the '716 patent was tested against Roberts, Defendants, on June 27, 2014,

filed a petition for *ex parte* reexamination.  In that petition, Defendants argued that a substantial

new question of patentability existed based on the prior art reference Roberts as well as other

"ALOHA" references, like Abramson and Binder, and Beamish.   As it turns out, Defendants

were right to file their petition after they discovered Roberts.  It was the first reference cited by

the Patent Office when it entered its Order last month holding that Roberts and the other prior art

raise substantial new questions of patentability.  Ex. A, p. 6.

Plaintiffs try to rush this Court to a decision by arguing that the reexamination was "belated," but that argument lacks merit.  Plaintiffs' own delay in bringing its motion has caused Plaintiffs' to fret over timing.  Despite knowing of the reexamination since June, and being aware that the prosecution bar prevented trial counsel from participating in it (*see*, Ex. B), Plaintiffs waited all summer before questioning the application of the bar.

It is not clear whether Plaintiffs are legitimately concerned about the two month filing deadline it referred to either.  *See*, ECF 213, p. 1.  That deadline relates to filing a patent owner statement and is entirely optional.  Ex. C, MPEP §2249.  The patent owner can wait until after the first office action before filing anything with the Patent Office.  In any event, if Plaintiffs are truly concerned about timing, it is Plaintiffs' own delay that caused such concern.

Defendants' filing of the request for reexamination of the '716 patent was done expeditiously upon discovery of critical invalidating prior art of Roberts.  Its timing is a function of the recent date on which Defendants' discovered Roberts and Plaintiffs' opposition to having this Court consider Roberts when addressing the validity of the '716 patent.

### B. Plaintiffs Cannot Be "Prejudiced" By Having To Train Another Set of Attorneys for Reexamination Because Plaintiffs Already Have a Prosecution Team That Is Fully Educated On All the Arguments Made In the Litigation

Bryan J. Jaketic is one of the many attorneys working in the Intellectual Property and Technology practice group at Squire Patton Boggs, one of the firms representing Plaintiffs as trial counsel.  Ex. D, p. 4.  Since early 2007, Mr. Jaketic has been responsible for prosecuting the '716 patent and U.S. Patent Nos. 7,813,726, 8,041,347, and 8,150,380 which are all related to the '716 patent.

In prosecuting the patents, Mr. Jaketic filed amendments, made arguments, and filed information disclosure statements.  An information disclosure statement ("IDS") is a submission filed by the applicant for the purpose of informing the Patent Office of information that is material to the patentability of the claims.  In prosecuting the related patents, Mr. Jaketic made numerous IDS submissions identifying the various briefing, expert reports, prior art, and court orders made of record in this litigation.  A list of all that material is on the first four pages of each patent.  Exhibits E-G.  Every IDS bears Mr. Jaketic's name and registration number.  *See, for example*, Ex. H, the file history of the '726 patent, p. 162-200 and 258-274.  By signing those IDS submissions, Mr. Jaketic certified that he read and was aware of the contents of all of the material submitted.  It is necessarily true, therefore, that Mr. Jaketic is fully informed as to the status of the litigation and the parties' positions.

There is no basis for Plaintiffs' argument that its prosecution team will have to "prepare from scratch."  ECF 213, p. 9.  Quite the contrary, Mr. Jaketic is already up-to-speed, having reviewed all of the relevant litigation material in his IDS submissions.  Due to the prosecution bar that has been in place, Plaintiffs have had two teams of attorneys for years.  Plaintiffs have trusted Mr. Jaketic to handle the prosecution of its applications since their inception.  They have also trusted him to take the lead on the reexamination.  In fact, he has already been in contact with the PTO regarding it.  Ex. I.  That eliminates any "potential difficulty [they] might face if forced to rely on other counsel in representing [them] before the PTO."  ECF 213, p. 8.  Plaintiffs already have other counsel.  Maintaining separation between them simply calls for Plaintiffs to continue following their long established practice, a practice they agreed to.

4

There is also nothing preventing Plaintiffs' trial counsel from advocating the exact same positions before this Court as the prosecution team advocates before the Patent Office.  The prosecution team is fully capable of sending information to the trial team.  There is no basis for the fear that Plaintiffs will present conflicting arguments.

Thus, unlike the case law Plaintiffs cited, Plaintiffs have already have two teams of attorneys in place, one for trial and one for prosecution.  Plaintiffs have also ensured that the prosecution team is aware of the entirety of the public record, including all of Plaintiffs' and Defendants' arguments respecting the scope of the prior art.  The argument that Plaintiffs must prepare its defense "from scratch" has no merit.

### C.  The Protective Order Bars Trial Counsel from Participating In the Prosecution of Their Clients' Patents—That Includes Reexaminations

The express purpose for having the protective order in this case was because of the Parties' recognition that discovery would involve "confidential, trade secret information."  ECF 151, p. 1.  To facilitate discovery, the parties struck a bargain that would allow the transfer of secret information based on the agreement that the information "will be used for no purposes other than this litigation."  ECF 151, p. 1.  The protective order specifically identifies those attorneys that are considered Trial Counsel as including certain attorneys from Benesch, Friedlander, Coplan & Arnoff LLP and Squire Sanders (US) LLP (now Squire Patton Boggs).  However, there are two important caveats.  The first is an exclusion based on an attorney's job that states "(c) The definition of 'Trial Counsel' excludes any attorney, patent agent, and their support staff that prepares or prosecutes patent applications for their respective clients in the field of wireless audience response systems for the duration of this litigation."  ECF 151, p. 3.  The second is an exclusion based on an attorney's access to information that states: "(d) No attorney

with access to Confidential Information relating to technical research, development, or product design of an opposing party under the instant protective order may be substantively involved with patent preparation or prosecution for their respective clients for two years from the conclusion of this action."  ECF 151, p. 3.  Plaintiffs' counsel, Amanda Miller, a member of the Patent Bar, drafted those sections of the protective order.  *See*, Ex. J; Ex. K.  Now, Plaintiffs, having received the benefit of that bargain by obtaining Defendants' confidential information, seek the Court's permission to not uphold their end of the deal.

Here, "Trial Counsel" explicitly excludes anyone that "prepares or prosecutes patent applications for their respective clients."  ECF 151, p. 3, *emphasis added*.  That defeats Plaintiffs' argument that Defendants' reexamination of Plaintiffs' patent is contrary to the protective order.

The Plaintiffs' alternate argument, that reexamination is not the prosecution of a "patent application," also fails.  While the Protective Order uses the term "patent applications" in section (c), it uses the broader term "patent preparation or prosecution" in section (d).  Assuming for the purposes of this motion that Plaintiffs' assertion that "patent applications" can only mean pre-grant applications, the use of the broader term in section (d) must mean that no one with access to the confidential information is permitted to participate in prosecution or preparation of any patent, not just "patent applications."  Plaintiffs inappropriately seek to redraft section (d) to insert the term "application" (i.e. redraft "patent preparation or prosecution" to read "patent *application* preparation or *application* prosecution").

Read together, the use of two different terms in the two sections establishes that any person with access to the other's confidential information may not participate in any prosecution before the Patent Office.  Reexamination is prosecution.  In fact, the Patent Office expressly

6

categorizes reexamination proceedings as prosecution.  As shown below in the excerpt of the

Patent Office's website, communications with the Patent Office in a reexamination, such as Mr.

Jaketic's interview with the Patent Office on July 10, 2014 (Ex. I), are identified under the

heading "Document Category" and are labeled "PROSECUTION."   Ex. L.



The prosecution of a reexamination is treated just like the prosecution of an application, right

down to issuing office actions and submitting amendments.  *See*, Ex. M; Ex. N, MPEP §2250.

The reexamination of the '716 patent is "prosecution" and the Court must continue to prohibit

Plaintiffs' trial counsel from engaging in that prosecution per the parties' agreement.

    **D.**    **Strong Policy Concerns Dictate That Plaintiffs Cannot Be Provided the Opportunity To Use Defendants' Confidential Information To Alter the Scope of Their Claims During the Prosecution Before the PTO**

In a reexamination, the patent owner has the right to make amendments to the claims and

provide arguments respecting those amendments.  Ex. N, MPEP §2250, *see specifically*, section

I.B.  The amendments may be made in the optional patent owner statement or after the first

office action.  Ex. O, MPEP §2260; Ex. P, MPEP §2266.  If Plaintiffs are permitted to tear down

the wall between their trial counsel and their patent prosecutors, Plaintiffs will be able to hone

their amendments and target Defendants' products through the use of Defendants' confidential, trade secret information.  Avoidance of that specific danger was the purpose of having the prosecution bar in place to begin with, and it is the reason the Court should uphold the bar now. In the Sixth Circuit, the only time a court has permitted the modification of a protective order in the manner sought by Plaintiffs is where the Plaintiffs' trial counsel has pledged that it will not draft new claims or amend existing claims during the reexamination.  *Hochstein v. Microsoft Corp.*, 2008 WL 4387594, *3 (E.D. Mich. Sept. 24, 2008).  Plaintiffs made no such pledge here.

In this case, Plaintiffs can amend their claims in an attempt to avoid the prior art while simultaneously targeting Defendants' product through the use of Defendants' secret information and Defendants have no ability to counter that use.  The specifics of how the devices work is not apparent from any public literature, but rather is described in Defendants' highly confidential computer code and internal testing data.  Armed with Defendants' secret code, Plaintiffs' trial counsel can direct the drafting of an amendment, or even a new claim, that homes in on exactly how Defendants' product works.  By drafting focused claims, Plaintiffs can try to carve away the prior art while still maintaining an argument for infringement.

For example, assume that the picture below was made known to Trial Counsel only on an AEO basis and that they had no alternate means of obtaining it or the information it discloses.



Now having the secret knowledge that Defendants' product is white, elongated and has six buttons along its top length, Plaintiffs could use that information to draft a limitation that the handheld must be an elongated rectangle with exactly six buttons oriented horizontally along its

8

top length.  Plaintiffs could then argue that Roberts, for example, only taught handhelds, but did not teach the use of exactly six buttons in the specific claimed orientation.  In that scenario, Plaintiffs would have been able to craft the limitation to specifically capture Defendants' product, solely through its knowledge of Defendants' confidential information, while simultaneously excising Roberts from the field of prior art.  The danger of use persists even outside the opportunity for purposeful use because it is not possible for Plaintiffs to separate what they learned from Defendants from Plaintiffs' own thoughts.  *See, In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed.Cir. 2010).

It is also no safeguard to rely on the thought that it would be "short sighted" for Plaintiffs to narrow the claims to only capture Defendants' product.  *See, Mirror Worlds, LLC v. Apple, Inc.*, 2009 WL 2461808, *2 (E.D.Tex. Aug. 11, 2009).  In an *ex parte* reexamination, Plaintiffs can draft new narrow claims to cover Defendants' products while drafting claims with other limitations, such as to a round handheld, to also avoid the prior art but still capture other competitors.  As the Court in *Mirror Worlds* recognized, "there may be situations that warrant excluding litigation counsel from participating in reexamination proceedings."  *Mirror Worlds*, 2009 WL 2461808, at *2.  This is one of them.

### III.    The Case Law Relied Upon By Plaintiffs Does Not Support the Broad Relief It Requests In Its Motion

#### A.    Plaintiffs Fail To Establish On a Counsel-By-Counsel Basis that Any of Their Attorneys Should Be Exempt From the Prosecution Bar this Court Entered

While the decision to enter a prosecution bar is governed by Federal Circuit law, *see*, *Deutsche Bank*, 605 F.3d at 1378, the question here is not whether to enter a protective order barring trial counsel from prosecuting their clients' patents.  The Court already did that.  Instead

9

the Court must consider whether Plaintiffs have satisfied their burden to show that the Protective Order the parties agreed to should be modified to allow their trial counsel to participate in the prosecution of their clients' patent on reexamination.  Plaintiffs have not met that burden.

According to the Federal Circuit, "the party seeking an exemption from a patent prosecution bar must show on a counsel-by-counsel basis: (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use."  *Deutsche Bank*, 605 F.3d at 1381.  That is consistent with the Sixth Circuit's practice of placing the burden on the party seeking modification.  Indeed, in *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 163 (6th Cir. 1987), the Court addressed the modification of protective orders that restrict access to secret information and found "the court should require the party seeking modification to show why the secrecy interests deserve less protection than they did when the order was granted."

Here, Plaintiffs failed in carrying their burden.  Plaintiffs ignore the requirement that exemptions must be on a counsel-by-counsel basis.  Instead of addressing each person that Plaintiffs seek an exemption for, Plaintiffs broadly assert that all of their attorneys should be permitted to ignore the prosecution bar.  That is contrary to law.

Even if Plaintiffs had provided arguments on a counsel-by-counsel basis, they could not pass the first hurdle set by the Federal Circuit.  The Court provided guidance on the type of

10

decision making that gives rise to the bar by distinguished duties like "reporting office actions or filing ancillary paperwork" from substantive engagement in prosecution through "making strategic decision of the type and scope of patent protection…or strategically amending or surrendering claim scope during prosecution."  *Deutsche Bank*, 605 F.3d at 1380-1381.  The reexamination at issue here involves responding to office actions and strategically amending claim scope, i.e. the very "prosecution-related competitive decision making" implicated by the first prong.  Plaintiffs have not and cannot overcome the test for exemption.

**B.    The Cases Plaintiffs Rely On Do Not Support Plaintiffs' Request**

The case law Plaintiffs cite is readily distinguishable from the situation at bar.  In *Mirror Worlds,* the Court considered the entry and scope of a protective order.  2009 WL 2461808, at *1.  The Court looked to safeguards used in other cases, such as, "that plaintiff's outside counsel would not prosecute the reexamination, that plaintiff's counsel would not reveal defendants' confidential information to any reexamination counsel or agent, and that plaintiff's outside counsel many not use defendants' confidential information for any purpose other than the litigation."  *Id*. at *1.  The Court then found that the plaintiff "stipulated to the inclusion of these safeguards."  Based on that stipulation, plaintiffs' counsel was allowed to participate in the reexamination.  *Id*. at *2.

In *Mirror Worlds,* the plaintiff could choose to provide its counsel with access to confidential information, or withhold that information from its counsel so that they could prosecute the reexamination, but not both.  Here, however, Plaintiffs' trial counsel have already had access to Defendants' confidential information for years.  Rather than making the same stipulation as plaintiffs in *Mirror Worlds*, Plaintiffs specifically want to allow its trial counsel to

11

also participate with its prosecution counsel in the reexamination to decide how to amend the claims.  That is improper.

In *NeXedge, LLC v. Freescale Semiconductor, Inc.*, 820 F.Supp.2d 1040, 1042 (D.Ariz. 2011), the parties were engaged in litigation, and the defendants then filed for *inter partes* reexamination following which the Court entered a protective order.  After that, the Court considered whether to also enter a prosecution bar.  *Id.* at 1042.  In assessing the risks, the Court noted that "Plaintiff is not a competitor of Defendants, its sole asset is the Asserted Patent, and it is not in the business of developing or patenting new products." *Id.* at 1044.  Also, the plaintiffs stated that they would include in the protective order "a requirement that Plaintiff not rely in the reexamination on highly confidential information disclosed by Defendants." *Id.* at 1044-1045.

None of those factors are present in this case.  This case does not involve an *inter partes* reexaminations, which is essentially a mini trial where both sides get to present evidence.  This case relates to *ex parte* reexamination where Defendants are barred from participating or replying to Plaintiffs' response to any office action.  Additionally, Plaintiffs and Defendants are direct competitors.  Each is involved in developing and patenting new products.  The '716 patent is not Plaintiffs "sole asset."  Plaintiffs also include no representation that they will not use Defendants' confidential information in the reexamination nor can they.  Unlike *NeXedge*, where the case was just beginning and attorneys could be shielded from such information, here, Plaintiffs' trial counsel has been intimately familiar with Defendants' confidential information for years.  It would be virtually impossible for them to compartmentalize that information to ensure its non-use at this late stage.  *See, Deutsche Bank*, 605, F.3d at 1378 ("It is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter

12

how well-intentioned the effort may be to do so." *citations omitted*).

The *Pall Corp. v. Enteris, Inc.*, 655 F.Supp.2d 169, 172 (E.D.N.Y. 2008) case involved an objection to a Magistrate's order requiring that the Court only overrule the decision if it was clearly erroneous or contrary to law.  It also presented disparate facts to those before this Court. In that case, the defendants' sought to bar one of plaintiffs' attorneys from participating in a reexamination of a patent directed to pleated filters that was involved in a separate lawsuit that the defendants had no part in.  *Id.* at 170-171.  Not only was the technology of the reexamination different from the technology at issue in the parties' litigation, the *Pall* plaintiffs also represented that they were not seeking patents related to the reexamination technology, that that family of patents was closed, and that Pall was precluded from filing any continuation applications directed to it.  *Id.* at 175.  The Court found that it would be inappropriate to bar the trial attorney from a reexamination related to a patent that was both not at issue in the litigation between the parties and directed to subject matter not at issue between the parties.  *Id.* at 176.

In this case, the Court need not defer to any prior decision.  Moreover, the '716 patent is the patent at issue both in this litigation and in the reexamination.  Unlike *Pall*, where only one attorney was exempt because the reexamination involved unrelated technology and an unrelated party, here Plaintiffs want to dispense with the protective order totally so that all of its counsel can address the reexamination of the technology in suit.  Plaintiffs also make no representations about the scope of their patent family.  *Pall* does not support Plaintiffs broad request in this case.

In *Ameranth, Inc. v. Pizza Hut, Inc.*, 2012 WL 528248, *1 (S.D.Cal. 2012), the issue was the scope of the protective order in the first instance.  There, the Court initially noted that the model protective order prevented recipients of confidential information from acting as a "patent

13

prosecutor on his or her own clients' patents", and that "reexamination and reissue proceedings are considered 'prosecution.'" *Id*. at *2. Nevertheless, the Court found that reexaminations should not be included in that case. *Id*. at *8.

The difference between this case and *Ameranth* is that here, there is a pending reexamination on the patent-in-suit whereas in *Ameranth* there was not. Also, the Court in *Ameranth* was addressing how discovery would be conducted at the start of the case. Thus the defendant in *Ameranth*, knowing the trial counsels' scope of access to information and access to any reexamination, was afforded the opportunity to weigh its options.

*Ameranth* simply represents one District Court's conclusion. In this District, the Court reached the opposite conclusion. In *Datatrak Int'l, Inc. v. Medidata Solutions, Inc.*, 2011 WL 3652444, *3 (N.D. Ohio Aug. 19, 2011) the Court determined that the proper scope of a prosecution bar should cover all patent prosecution, including reexamination. The Court expressly held "attorneys who access AEO technical materials are not permitted to participate in reexamination proceedings." *Id. at* *3. This Court should follow *Datatrak* as it echoes the *Deutshe Bank* reasoning that counsel cannot compartmentalize a defendants' information from its own thoughts. *See*, *Datatrak*, 2011 WL 3652444, *3; *Deutsche Bank*, 605, F.3d at 1378.

## IV. Plaintiffs Used Defendants' Confidential Information Once Before When Plaintiffs Were Prosecuting Its Related Patents and the Court Should Prevent that From Happening Again

As noted above, Plaintiffs have three other patents related to the '716 patent. It is undisputed that Plaintiffs used Defendants' confidential information during the prosecution of those patents by transmitting attorneys' eyes only material to the Patent Office. That was the subject of Defendants' Expedited Motion for an Order to Show Cause. ECF 99.

14

This is not a case where Defendants' have some vague concern about the use of information.  Here, Defendants seek this Court's assistance in preventing Plaintiffs' use of their confidential, trade secret information in the prosecution of a patent for the second time.  The protective order is in place to protect the Defendants' information.  Allowing Plaintiffs' trial counsel to participate in the reexamination destroys that protection.

## V.    Conclusion

Shortly after Defendants' discovered the invalidating prior art reference Roberts, Defendants' brought it to this Court's attention which Plaintiffs opposed.  Thereafter, Defendants prepared and filed an *ex parte* request for reexamination of the '716 patent.  The terms of the protective order bar any person having access to the other party's confidential information from participating in "patent preparation or prosecution for their respective clients."  Accordingly, since the very beginning, Plaintiffs have maintained two separate teams, one for trial and one for prosecution.  The prosecution team has reviewed all of Plaintiffs' and Defendants' arguments regarding the validity of the '716 patent and is fully aware of Plaintiffs' trial position.  Any arguments made by the prosecuting attorney before the Patent Office can be shared with the trial team to ensure that Plaintiffs present consistent arguments in both venues.  Maintaining the prosecution bar will ensure that Plaintiffs do not again use Defendants' confidential information in the prosecution of its patents.

The party at risk here is Defendants, not Plaintiffs.  The Plaintiffs failed to show on a counsel-by-counsel basis that any of its trial attorneys should be exempt from the prosecution bar.  The Court should uphold the prosecution bar and prevent Plaintiffs' trial counsel from participating in the reexamination proceeding.

15

Respectfully submitted,


Dated: September 9, 2014                    By:  _____/s/ Arne M. Olson_____

                                            Arne M. Olson (admitted *Pro Hac Vice*)
                                            Dennis H. Ma (admitted *Pro Hac Vice*)
                                            Matthew De Preter (admitted *Pro Hac Vice*)
                                            **OLSON & CEPURITIS, LTD.**
                                            20 North Wacker Drive, 36th Floor
                                            Chicago, IL 60606-3103
                                            Tel: (312) 580-1180
                                            Fax: (312) 580-1189
                                            aolson@olsonip.com
                                            dma@olsonip.com

                                            Gary A. Corroto (0055270)
                                            Edmond J. Mack (0082906)
                                            **TZANGAS PLAKAS MANNOS LTD.**
                                            220 Market Avenue South, 8th Floor
                                            Canton, Ohio 44702
                                            Tel: (330) 455-6112
                                            Fax: (330) 455-2108
                                            gcorroto@lawlion.com
                                            emack@lawlion.com

                                            Attorneys for Defendants,
                                            HOLTZBRINCK PUBLISHERS, LLC and
                                            MACMILLAN PUBLISHERS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing document was served on September 9, 2014 upon the following counsel of record in the manner listed:

**VIA CM/ECF**
Bryan A. Schwartz, Esq.
Amanda M. Miller, Esq.
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, OH 44114-2378
Tel: (216) 363-4500
bschwartz@beneschlaw.com
amiller@beneschlaw.com

Steven M. Auvil, Esq.
**SQUIRE PATTON BOGGS (US) LLP**
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Tel: (216) 479-8023
steven.auvil@squirebp.com


_____/s/ Matthew De Preter_____
One of the Attorneys for Defendants,
HOLTZBRINCK PUBLISHERS, LLC and
MACMILLAN PUBLISHERS, INC.